IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RICKY LAVERN SANDERS,                    3:14-CV-02008-BR

         Plaintiff,                      OPINION AND ORDER

v.

CAROLYN W. COLVIN,
Commissioner, Social Security
Administration,

         Defendant.


GEORGE J. WALL
1336 E. Burnside
Suite 130
Portland, OR 97214
(503) 236-0068

         Attorney for Plaintiff

BILLY J. WILLIAMS
United States Attorney
JANICE E. HEBERT
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003


1 - OPINION AND ORDER

**DAVID MORADO**
Regional Chief Counsel
**JORDAN D. GODDARD**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/A 221A
Seattle, WA 98104
(206) 615-2733

       Attorneys for Defendant


**BROWN, Judge.**

       Plaintiff Ricky Lavern Sanders seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.  This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

       For the reasons that follow, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.


## ADMINISTRATIVE HISTORY

       Plaintiff filed an application for DIB on May 23, 2011, alleging a disability onset date of February 10, 2000. Tr. 144.[1]  The application was denied initially and on reconsideration.  An Administrative Law Judge (ALJ) held a hearing on April 2, 2013.  Tr. 32-60.  At the hearing Plaintiff

---

     [1] Citations to the official transcript of record filed by the Commissioner on June 19, 2015, are referred to as "Tr."

was represented by an attorney.  Plaintiff and a vocational
expert (VE) testified at the hearing.

The ALJ issued a decision on April 15, 2015, in which he
found Plaintiff was not disabled before his March 31, 2006, date
last insured and, therefore, is not entitled to benefits.
Tr. 29-40.  Pursuant to 20 C.F.R. § 404.984(d), that decision
became the final decision of the Commissioner on October 17,
2014, when the Appeals Council denied Plaintiff's request for
review.  Tr. 1-4.  *See Sims v. Apfel*, 530 U.S. 103, 106-07
(2000).


## BACKGROUND

Plaintiff was born July 10, 1959, and was 53 years old at
the time of the hearing.  Tr. 144.  Plaintiff completed high
school and a one-year marketing certificate.  Tr. 38.  Plaintiff
has past relevant work experience as a forklift operator and
hand-packager.  Tr. 56.

Plaintiff alleges disability during the relevant period due
to surgery on both knees and hidradenitis.  Tr. 61.

Except when noted, Plaintiff does not challenge the ALJ's
summary of the medical evidence.  After carefully reviewing the
medical records, this Court adopts the ALJ's summary of the
medical evidence.  *See* Tr. 23-25.


3 - OPINION AND ORDER

## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)).  "It is more than a mere scintilla [of evidence] but less than a preponderance."  *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility,
resolving conflicts in the medical evidence, and resolving
ambiguities.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir.
2009).  The court must weigh all of the evidence whether it
supports or detracts from the Commissioner's decision.  *Ryan v.
Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Even
when the evidence is susceptible to more than one rational
interpretation, the court must uphold the Commissioner's findings
if they are supported by inferences reasonably drawn from the
record.  *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).
The court may not substitute its judgment for that of the
Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir.
2006).

## DISABILITY ANALYSIS

**I.    The Regulatory Sequential Evaluation**

The Commissioner has developed a five-step sequential
inquiry to determine whether a claimant is disabled within the
meaning of the Act.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir.
2007).  *See also* 20 C.F.R. § 404.1520.  Each step is potentially
dispositive.

At Step One the claimant is not disabled if the Commissioner
determines the claimant is engaged in substantial gainful
activity.  20 C.F.R. § 404.1520(a)(4)(I).  *See also Keyser v.*

*Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).  *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations.  20 C.F.R. § 404.1520(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen*, 885

6 - OPINION AND ORDER

F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past.  20 C.F.R. § 404.1520(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform.  *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. § 404.1520(g)(1).

## **ALJ'S FINDINGS**

At Step One the ALJ found Plaintiff had not engaged in substantial gainful activity from his February 10, 2000, alleged onset date through his March 31, 2006, date last insured. Tr. 21.

At Step Two the ALJ found before Plaintiff's date last

7 - OPINION AND ORDER

insured Plaintiff had the severe impairments of "right knee torn meniscus, status post arthroscopic surgery" and hidradenitis. Tr. 21.

At Step Three the ALJ concluded Plaintiff's medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1, before his March 31, 2006, date last insured. Tr. 22.  The ALJ found Plaintiff had the RFC to perform light work through his date last insured.  The ALJ also found before Plaintiff's March 31, 2006, date last insured Plaintiff could occasionally lift and carry 20 pounds and frequently lift and carry ten pounds; could stand and walk for six hours in an eight-hour work day; could sit for six hours in an eight-hour work day; could occasionally balance, kneel, crouch, and crawl; could frequently climb ramps and stairs; could never climb ladders, ropes, or scaffolds; and "would be expected to be absent for one 1-2 week period one time per year."  Tr. 22.

At Step Four the ALJ found Plaintiff had past relevant work as a forklift operator and hand-packager.  Tr. 36.

At Step Five the ALJ found Plaintiff could perform jobs that exist in significant numbers in the national economy before his date last insured.  Tr. 26.  Accordingly, the ALJ found Plaintiff was not disabled before his March 31, 2006, date last insured.

## DISCUSSION

Plaintiff contends the ALJ erred by (1) improperly rejecting Plaintiff's testimony; (2) improperly rejecting the opinion of Paul Helgason, M.D., treating physician; and (3) improperly finding Plaintiff could do other jobs in the national economy before his date last insured.

## I.    The ALJ provided clear and convincing reasons for partially rejecting Plaintiff's testimony.

Plaintiff alleges the ALJ erred by failing to provide clear and convincing reasons for partially rejecting Plaintiff's testimony related to Plaintiff's hidradentitis.

In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and he must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.  *Cotton*, 799 F.2d 1403, 1407 (9th Cir. 1986).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and convincing reasons for doing so.  *Parra v. Astrue,* 481 F.3d 742,

750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th
Cir. 1995)).  General assertions that the claimant's testimony is
not credible are insufficient.  *Id*.  The ALJ must identify "what
testimony is not credible and what evidence undermines the
claimant's complaints."  *Id*. (quoting *Lester*, 81 F.3d at 834).

At the hearing Plaintiff testified his hidradenitis flares
up approximately every six months and he has "to be out [of work]
for a month or two" when he gets an abscess.  Tr. 40.  Plaintiff
testified he had his first serious incident of hidradenitis in
2003 when he had to have surgery for the condition.  Tr. 44.
Plaintiff testified after his 2003 incident his hidradenitis
would recur every "six months to a year" necessitating treatment.
Tr. 45.  Plaintiff noted when he receives surgery for his
hidradenitis he is sometimes held at the hospital overnight and
sometimes it is only a day surgery.  Tr. 45-46.  Plaintiff
testified he has spent time in the hospital for his hidradenitis
"at least seven times."  Tr. 45.  Plaintiff stated if he had a
recurrence of hidradenitis at work that resulted in surgery, he
would not be able to go to work for up to two weeks afterwards so
the area could heal properly.

The ALJ found "claimant's [reported] symptoms were
disproportionate to the objective and clinical findings for the
period from February 10, 2000, through March 31, 2006."  Tr. 23.
The ALJ concluded Plaintiff's "alleged inability to perform work

activity" during the relevant period was "unsupported" and that Plaintiff was only "partially credible."  Tr. 23-24.

The ALJ noted the medical record during the relevant period reflects Plaintiff was admitted to the hospital for hidradenitis once in 2003, was seen by a doctor for perianal fistuals in April 2004, and was referred to surgery for recurrent rectal abscesses in October 2005.  The ALJ noted during the relevant period Plaintiff generally received routine and/or conservative treatment for his hidradenitis.  Moreover, the record reflects Plaintiff had only one surgical procedure to treat his hidradenitis during the relevant period and his pain was controlled with over-the-counter medications.

On this record the Court finds the ALJ provided clear and convincing reasons supported by substantial evidence in the record for finding Plaintiff's testimony was not entirely credible as to the limiting effects of his hidradenitis during the relevant period.  The Court, therefore, concludes the ALJ did not err when he rejected Plaintiff's testimony in part.

**II.   The ALJ did not err when he gave little weight to the opinion of Dr. Helgason, treating physician.**

Plaintiff contends the ALJ erred when he gave little weight to the March 2013 opinion of Plaintiff's treating physician Dr. Helgason.

An ALJ may reject a treating physician's opinion when it is inconsistent with the opinions of other treating or examining

11 - OPINION AND ORDER

physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)(quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  When the medical opinion of a treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it.  *Thomas*, 278 F.3d at 957.  *See also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1995).

On March 26, 2013, Dr. Helgason completed a medical questionnaire in which he indicated he had treated Plaintiff since September 16, 2009.  Tr. 795.  Dr. Helgason opined Plaintiff could lift and carry 50 pounds frequently; could stand and walk for 15 minutes at a time for a total of two hours in an eight-hour workday; could sit for 30 minutes at a time for a total of seven hours in an eight-hour workday; could occasionally climb, balance, and stoop; could never kneel; and could frequently "perform all other postural and manipulative movements."  Tr. 24, 796-97.  Dr. Helgason noted Plaintiff would be "off task" for 10% of the workweek and would miss 16 hours of work per month for treatment of his rectal abscesses.  Tr. 797.  Dr. Helgason suggested Plaintiff could suffer drowsiness due to taking Gabapentin.  Tr. 797.  Dr. Helgason opined Plaintiff was not able to complete a normal work day due to hidradenitis, foot

12 - OPINION AND ORDER

pain, right-knee arthritis, and hypertension.  Although
Dr. Helgason did not begin treating Plaintiff until more than
three years after his date last insured, Dr. Helgason opined
Plaintiff's limitations were the same as Dr. Helgason described
before March 31, 2006, based on Plaintiff's September 2003
admission for surgery to address his hidradenitis and "[a]t least
six surgeries for chronic peri and hidradenitis . . . since
2003."  Tr. 797.

     The ALJ gave Dr. Helgason's opinion little weight as to his
opinion of Plaintiff's limitations during the relevant period on
the ground that his opinion was not consistent with the medical
record for the relevant period.  For example, Dr. Helgason opined
Plaintiff suffered drowsiness due to Gabapentin, but Plaintiff
did not begin taking that medication until after his March 31,
2006, date last insured.  Similarly, Dr. Helgason noted Plaintiff
was limited by foot pain, but the record reflects that condition
did not develop until after March 2006.  Dr. Helgason also based
his opinion of Plaintiff's limitations before March 2006 on the
premise that Plaintiff had "[a]t least six surgeries for
[hidradenitis] since 2003."  Although the record reflects
Plaintiff had at least seven operations for hidradenitis from
2003 through 2013, he had only one operation within the relevant
period.

     On this record the Court concludes the ALJ did not err when

he gave little weight to Dr. Helgason's March 2013 because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.

**III. The ALJ did not err at Step Five.**

Finally, Plaintiff asserts the ALJ erred at Step Five when he found Plaintiff could sustain competitive employment during the relevant period because if Plaintiff missed one or two weeks of work each year, he would have to work for a company that employed 50 or more people in order for FMLA to apply and even then FMLA would not apply in the first six months of Plaintiff's employment.  Plaintiff, therefore, contends he could not "sustain competitive employment."  The VE, however, addressed Plaintiff's contention at the April 2, 2013, hearing.

The ALJ posed a hypothetical to the VE in which an individual could perform the full range of light work, but "should never climb ladders, ropes or scaffolds.  Should only frequently climb ramps or stairs and can occasionally balance, kneel, crouch and crawl," and, in addition, "one time per year would be out of work for an entire week and this would happen essentially at an unscheduled or unpredictable basis."  Tr. 56-57.  The VE concluded an individual with those restrictions "would be able to sustain competitive employment" because "most employers follow the FMLA law."  Tr. 57.  The VE also testified an individual who "would be out of work for two [consecutive]

weeks every year, . . . on an unpredictable basis" would be able
to sustain competitive employment because he would be protected
by FMLA.  Tr. 57.  Plaintiff's attorney engaged in the following
exchange with the VE regarding his testimony:

> A.    Yes.  Well and I would say that you know,
>       incidental FMLA gives you up to 12 weeks off,
>       so the one and two-week part of that
>       hypothetical in two and three is kind of the
>       lower end of the maximum time allowed.
>
> Q.    Right.  And then -- well my understanding is
>       that you have to have worked somewhere for
>       X-amount of time.
>
> A.    Six months.
>
> * * *
>
> Q.    So if it was less than six months, you would
>       get no protection at all from that?
>
> A.    Right.  Although, if you think of the
>       standard way we look at absenteeism of a
>       maximum of no ill [*sic*] up to a couple of
>       days per month, you know, so 2 times 12 would
>       get you the 24.  So even under the way we
>       typically look at absenteeism, 5 and 10 days
>       would be under the 24.

Tr. 58.  The VE continued to assert that an individual who would
miss up to two weeks of work per year would be able to sustain
competitive employment.

    At Step Five the ALJ relied on the VE's testimony related to
Plaintiff's ability to do other work in the national economy
despite possibly missing up to two weeks of work per year.  The
Ninth Circuit has made clear that the ALJ is entitled to rely on
the VE's expertise and testimony "regarding the number of

15 - OPINION AND ORDER

relevant jobs in the national economy." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

Accordingly, the Court concludes the ALJ did not err at Step Five when he concluded Plaintiff could perform other work in the national economy because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 19th day of January, 2016.

/s/ Anna J. Brown

_____

ANNA J. BROWN
United States District Judge

16 - OPINION AND ORDER